IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Janet L. Overfield,                                 Case No. 3:10CV2038

           Plaintiff

v.                                            ORDER

H.B. Magruder Memorial Hospital, Inc.,

           Defendant

Plaintiff, Janet L. Overfield, formerly a Registered Nurse (RN) with defendant Magruder Memorial Hospital, alleges that changes in her employment status and eventual termination resulted from retaliation for her exercise of rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612, interference with her benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140, age and disability discrimination, and a breach of promissory estoppel. She also alleges that the hospital was negligent in its hiring, retention, and supervision of her immediate supervisor.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

Pending are defendant's motion for summary judgment, [Doc. 31] and plaintiff's motion to strike hearsay portions of Debra Diebert's deposition and affidavit. [Doc. 33]. For the following reasons, I grant defendant's motion for summary judgment, and deny plaintiff's motion to strike.[1].

**Background**

On July 31, 2007, defendant hospital hired plaintiff as a full-time RN in its Medical/Surgery Department. The job description for an RN at Magruder states several physical requirements for performing the essential functions of the job: the ability to lift up to ten pounds 2/3 of the time; lift up to twenty-five pounds 1/3 to 2/3 of the time; lift up to fifty pounds 1/3 of the time; and push and pull 1/3 to 2/3 of the time. Overfield does not dispute that the requirements listed in the official job description accurately depict the requirements of her former position.

Overfield worked the night shift from July 2007 to August 2008. She then applied for and received a day-shift position as an RN. She also trained to perform additional duties as a "charge nurse." Throughout her employment, Overfield reported to Deborah Diebert, the Director of ICCU and Med/Surg Departments.

Overfield was familiar with Magruder's Family and Medical Leave policy; she requested and had several FMLA leaves under the policy during her employment.

In September, 2009, Overfield spoke with Diebert about taking leave in December, 2009, to have a hysterectomy. Diebert initially asked if Overfield could schedule the procedure for another time, as staffing was a problem around the holidays (Overfield was scheduled to work both

---

[1] Defendant does not offer the statements which plaintiff challenges as hearsay for the truth of the matter asserted. Defendant offers those statements as evidence of what was said, not that what was said was true. The affidavit which plaintiff wants to strike is, contrary to plaintiff's contention, based on Ms. Diebert's personal knowledge about safe nursing practices. I find that references in defendant's brief connect adequately to pertinent portions of the affidavit. On this basis I overrule plaintiff's motion to strike.

Christmas and New Year's; the requested leave included both). Diebert stated that because it was not an emergency procedure, Overfield still had a responsibility to plan the procedure so it did not affect or place undue hardship on the unit's day-to-day activities. The discussion grew heated and both Overfield and Diebert raised their voices. The argument did not result in a conclusion regarding Overfield's requested leave.

After the argument, Overfield talked to Jan Troeger, Magruder's Director of Nursing. Troeger told Overfield that she would approve the request for whenever Overfield's physician scheduled the procedure.

Later, Overfield talked to several other staff nurses at Magruder. Overfield encouraged the other nurses to avoid having such discussions with Diebert, and instead go to Troeger. Overfield admits that her statements to the other nurses were unprofessional. Diebert and Troeger subsequently decided to stop giving "charge nurse" duties to Overfield given her behavior and concerns about Overfield acting as a representative of hospital administration. Other nurses previously trained as charge nurses assumed Overfield's charge nurse duties.

On October 28, 2009, Overfield formally submitted her request for medical leave to Magruder, seeking leave from December 9, 2009, to January 20, 2010. Troeger approved her request.

Overfield's physician released her to return to work without restrictions on January 21, 2010. During her medical leave, however, Overfield developed another condition which restricted her ability to work. Overfield's neurologist stated she would be unable to work until after January 30, 2010. On January 29, 2010, Overfield completed another application to extend her FMLA leave from January 18, 2010, to March 1, 2010. Diebert approved the request.

Magruder subsequently notified Overfield that her available leave time under the FMLA would be exhausted on February 24, 2010. Magruder's leave policy includes an opportunity for an extended leave of absence beyond the statutory twelve weeks. Overfield applied for and received leave under this policy until March 1, 2010. During such extended leave, employees have to pay the full cost of health insurance premiums. The extended leave policy also states that current job positions are not guaranteed on the employee's return; re-employment is subject to the availability of a vacant position for which the employee is qualified.

On February 24, 2010, Overfield's doctor released her to return to work, though with restrictions. The restrictions included no heavy lifting of more than ten pounds or pulling or pushing with her left arm, for six weeks. Overfield told Diebert that her physician believed it would be three to six months before she would have full use of her left arm.

Due to the duration and extent of Overfield's restrictions, Magruder could not hold her RN position open. On February 25, 2010, Diebert called Overfield and told her that her restrictions prevented her from performing her RN duties and the hospital, as was its policy, would post the position. Diebert said Magruder could continue to be employed "p.r.n." (per diem or as needed). Overfield could apply for positions she was qualified for as they became open, if she so wished.

Overfield contacted Troeger to discuss the possibility of a position which fit her restrictions, given that she could not perform the duties of an RN. Troeger arranged to create a temporary, part-time job assisting with paperwork, which Overfield could do even with her physical restrictions. While Overfield was working in this position, she spoke again with Diebert about returning as an RN. Diebert informed Overfield that she could not return to working as an RN so long as she was under her physician's restrictions.

At the end of March, 2010, Overfield approached Troeger again, as she had recently learned that, because her position with the hospital was only part-time, she was not eligible for a health insurance premium reduction. Troeger explained that the hospital would not be able to help her while she was in a part-time position as long as she was still under her physician-imposed restrictions.

On April 6, 2010, Overfield's physician released Overfield from her restrictions. Overfield did not then apply for an RN position, but instead stayed on p.r.n. status as an RN. The p.r.n. policy required a nurse to work one twelve-hour shift in thirty consecutive calendar days or face termination; it is the nurse's responsibility to sign up for a shift or to ensure she works the requisite hours. Overfield asked what would happen if she refused to work a shift in the required time period, and whether it would jeopardize her ability to get unemployment benefits. She asked to be put at the end of the call list.

After thirty days Overfield contacted Magruder and requested a letter of termination. Overfield received the letter on May 3, 2010, with an effective date of May 1, 2010. Magruder policy did not provide for automatic termination if a nurse did not work the requisite shift; Overfield does not dispute that she would not have been terminated had she notmade her request.

On September 12, 2010, Overfield filed suit against Magruder based on the removal of charge nurse duties, her change in status to p.r.n., and her termination. She alleges that these actions were unlawful under the FMLA, 29 U.S.C. § 2612(a)(1), and unlawfully interfered with her ERISA benefits. 29 U.S.C. § 1140. Overfield also alleges disability discrimination under the Ohio Civil Rights Act, O.R.C. 4112.02(A), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, and age discrimination under the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 621

*et seq.* Overfield also alleges that Magruder's actions resulted in a breach of promissory estoppel and the intentional infliction of emotional distress, and that Magruder was negligent in their hiring, supervision, and retention of Debra Diebert.

## Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### 1. Family and Medical Leave Act

The FMLA permits employees to take up to twelve weeks of unpaid leave for personal or family medical purposes. 29 U.S.C. § 2612(a)(1); *Hoge v. Honda of America Manufacturing, Inc.*, 384 F.3d 238, 243 (6th Cir. 2004). The Sixth Circuit recognizes two theories of recovery under the

FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge*, *supra*, 384 F.3d at 244. Overfield brings her claim under the latter theory, alleging that her changes in employment status constituted discrimination and retaliation for her actions under FMLA.

When there is no direct evidence of unlawful conduct, I evaluate FMLA-retaliation claims under the "tripartite burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). A plaintiff can establish a prima facie case by showing that:

> (1) she engaged in a statutorily protected activity,
>
> (2) she suffered an adverse employment action, and
>
> (3) there was a causal connection between the adverse employment action and the protected activity.

*Id.* (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

The burden then shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant does that, the burden shifts back to the plaintiff to prove "that the defendant's proffered reason is a pretext for unlawful discrimination." *Id.*

Magruder concedes that Overfield engaged in statutorily protected activity when she requested and then received leave under the FMLA.

Overfield argues that there were three separate instances of adverse employment actions:

> (1) removal of her charge nurse duties following her request for leave;
>
> (2) transfer by Magruder of Ms. Overfield from her full time position to p.r.n. during her leave time, and

(3) terminating Ms. Overfield from employment.

[Doc. 42, p. 6].

### A. Removal of Charge Nurse Duties

Overfield first points to removal of her charge nurse duties as an adverse employment action. Magruder maintains that this cannot be an adverse employment action when Overfield herself was not "bothered by it." [Doc. 36, p. 126]. Overfield argues that she saw the act as one of discipline and revenge by her supervisor. Loss of authority and a pay differential constitute adverse employment actions. *Cf. Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining a "tangible employment action" as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Next Overfield must show a causal connection between removal of her charge nurse duties and her request for FMLA leave. To establish a causal link, "a plaintiff is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *E.E.O.C. v. Avery Dennis Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal quotation marks omitted). The Sixth Circuit has held that "temporal proximity between the protected activity and the adverse employment action, coupled with other indicia of retaliatory conduct, may give rise to a finding of a causal connection." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (internal quotation marks omitted).

Although the exact date of the removal of these charge nurse responsibilities is not clear, it was certainly within a month or less of Overfield's request for leave. *See, e.g., Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that the plaintiff established a causal

8

connection when termination occurred within three months of protected conduct). Two things are undisputed: 1) Overfield and Diebert had a heated conversation over the timing of Overfield's request for FMLA leave; and 2) Diebert, as Overfield's supervisor, chose to remove Overfield's charge nurse responsibilities. At this *prima facie* stage, that gives rise to an inference that the protected activity was the reason for the adverse action.

As Overfield has established a *prima case* for retaliation, the burden then shifts to Magruder to produce a legitimate, non-discriminatory reason for removing Overfield's charge nurse responsibilities. Magruder has met this burden. It is undisputed that Overfield made statements to other nurses which both Diebert and Overfield herself deemed "unprofessional." Overfield also does not dispute that the charge nurse's responsibilities include representing hospital administration, including Diebert, and that Diebert questioned her ability to do so after hearing about Overfield's conversation with fellow nurses. "Although the FMLA prohibits employers from considering a request for medical leave as a negative factor in an employer's decision to discharge or demote an employee, it is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Carpenter v. Kaiser Permanente*, 2006 WL 2794787, *19 (N.D. Ohio).

The burden then shifts back to Overfield to establish that this legitimate, non-discriminatory reason is actually pretext for discrimination. The Sixth Circuit has held that a plaintiff can refute the proffered reason by showing it "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (internal quotation marks omitted). Overfield has failed to show any of these, choosing merely to minimize her unprofessional remarks as "confiding in a friend."

This is not sufficient to refute Magruder's legitimate reasons for removing Overfield's charge nurse responsibilities. Overfield's claim fails on this point.

### B. Transfer From Full Time Position to P.R.N.

Overfield also argues that her removal from her full time position to p.r.n. constituted an adverse employment action. More severe than having charge nurse duties removed, being put on p.r.n. status dramatically reduced Overfield's salary and benefits. These consequences constitute an adverse employment action. *See Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (holding that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims") (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987)).

The causal connection is more difficult to establish - the temporal proximity between the protected conduct and adverse action is not as close as with the removal of charge nurse duties. Nevertheless, given my obligation to view the evidence in plaintiff's favor, I will assume that Overfield can make out a *prima facie* case for this action.

The burden shifts to Magruder to provide a legitimate, non-discriminatory reason for the change in Overfield's employment status. Magruder correctly points out that the Sixth Circuit has recognized that

> in retaliation cases where the medical information known to the employer prior to the termination decision shows that the employee could not return within 12 weeks, *Cehrs* . . . can be invoked by employers as a legitimate, nondiscriminatory reason for discharging the employee.

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 513-14 (6th Cir. 2006) (citing *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998)).

Overfield argues that her physician-imposed restrictions did not restrain her ability to perform her position, but does not dispute that she could not comply with all of the requirements of the job as listed in the job description. Overfield instead attempts to argue that she could perform the bulk of her duties, such that Magruder should have restored her to her previous position. Magruder conclusively shows that, given Overfield's medical status at the end of her leave, it would have been justified in terminating Overfield from hospital employment altogether. Placing her on p.r.n. status and providing her with part-time employment was more than the law requires.

### C. Termination

Last, Overfield correctly asserts her termination was an adverse employment action. Overfield cannot, however, succeed in showing a causal connection between her exercise of FMLA rights and her termination.

Overfield's termination resulted from her failure to work a shift in thirty consecutive days, as required by Magruder p.r.n. policy. Overfield does not dispute that she asked to be called last to work a shift, or that it was her responsibility to ensure she worked a shift within the thirty day period. Overfield also does not dispute that she sought a letter of termination from Magruder; Magruder management states it would not have terminated Overfield had she not requested it.

Moreover, Overfield makes no argument as to a causal connection between her request for FMLA leave and the termination, other than to reiterate the series of events already discussed above. This fails to make out a *prima facie* case.

### 2. ERISA Interference

Overfield asserts that Magruder's actions interfered with her ERISA benefits under § 510 of ERISA, 29 U.S.C. § 1140. Overfield does not provide any direct evidence of purposeful

interference, and so instead must use circumstantial evidence to show "the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which Trustee employee may become entitled." *Crawford v. TRW Automotive U.S. LLC*, 560 F.3d 607, 613 (6th Cir. 2009) (citing *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997).

If Overfield can establish a *prima facie* case, the burden then shifts to Magruder to provide a legitimate, non-discriminatory reason for the discharge. *Crawford, supra*, 560 F.3d at 613-14. If Magruder makes this showing, the burden shifts back to Overfield to show the proffered reason is pretext for discrimination. *Id.* at 614.

Overfield fails to provide any evidence that Magruder intended to interfere with her ERISA benefits, other than her actual termination. She points to nothing written or stated by Diebert or other Magruder personnel to suggest that her changes in employment status were made for the purpose of interfering with her ERISA benefits; Overfield only makes a broad statement that Diebert's actions were done with the purpose of harming Overfield financially. This is insufficient to meet her burden of production; no "'reasonable jury could find that the defendant's desire to avoid [retirement benefit] liability was a determining factor in plaintiff's discharge.'" *Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1114 (6th Cir. 2001) (quoting *Ameritech*, *supra*, 129 F.3d at 865).

Overfield cannot make out a *prima facie* case for ERISA interference under § 510, and so this claim must fail.

### 3. Disability Discrimination - OCRA and ADA

Overfield alleges that she was disabled, and Magruder violated the ADA, 42 U.S.C. § 12112, and the Ohio Civil Rights Act, O.R.C. 4112.02(A).

The same standards that apply to claims under the ADA apply to plaintiff's claim for disability discrimination under Ohio law. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). To establish a *prima facie* case of disability discrimination under the ADA for failure to accommodate, a plaintiff must show:

> "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."

*Id.* at 703 (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

The same burden-shifting framework discussed *supra* applies to ADA claims. *Id.*

The ADA defines a disability as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment

42 U.S.C. § 12102(1).

Overfield maintains that she is disabled within the ADA's definition under the first and second categories. She argues that the limitations on her left arm constituted a physical impairment which substantially limited major life activities. In support, she cites her need to do things in moderation and the physician-imposed lifting restrictions. I note that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 29 C.F.R § 1630.2(j)(1)(I). The EEOC regulations state that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R § 1630.2(j)(1)(ii).

13

Nevertheless, Overfield's claims that she is unable to perform major life activities is unsustainable in light of her admissions that she can fix her hair, dress herself, do laundry, go grocery shopping, rake leaves, cut the grass, and other varied activities. The fact that Overfield has had to "be careful with [her] arm", [Doc. 36, p. 165], does not rise to the level of a cognizable disability.

### 4. Age Discrimination - ADEA

Overfield asserts a claim under the ADEA. To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004) (citing *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001).

Magruder does not dispute that Overfield is over forty years old. As I stated earlier, Overfield's changes in employment status were adverse employment actions.

Magruder's contentions on the third prong, that Overfield was not "otherwise qualified" for the position, are, however, well-taken. Moreover, Overfield has not presented any evidence that she was replaced either as charge nurse or as a p.r.n. after her termination. The evidence of replacement she does provide, for a full-time R.N., was while Overfield was not qualified to perform her RN duties. She was still under physician-imposed restrictions which did not allow her to perform essential requirements of the job.

Overfield fails to make out a *prima facie* case for age discrimination, and this claim must be dismissed.

### 5. Detrimental Reliance/Promissory Estoppel

Regarding this claim Overfield does not dispute any of Magruder's contentions, which are well-taken. The claim should be dismissed.

### 6. Intentional Infliction of Emotional Distress

Overfield also contends that Magruder's actions constituted an intentional infliction of emotional distress. To prevail on this claim under Ohio law, the plaintiff must prove:

> "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it."

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 562 (1997)).

A defendant can only be held liable under this tort if "'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 375 (1983)).

Nothing Overfield alleges rises to this level of conduct. Overfield stated in her deposition that she had to attend counseling following the events at Magruder, but also admitted that counseling was largely due to domestic issues, not her employment situation. Although Overfield cites to her heated argument with Diebert, she does not allege that Diebert - or anyone else at Magruder - said or did anything that approximates atrociousness.

As Magruder points out, adverse employment decisions alone do not give rise to a claim of intentional infliction of emotional distress. "If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson*, *supra*, 173 F.3d at 376.

Overfield fails to sufficiently prove a claim for the intentional infliction of emotional distress, and so it must be dismissed.

### 7. Negligent Hiring, Supervision and Retention

Overfield alleges that Magruder was negligent in its hiring, supervision, and retention of Diebert. To prove negligent hiring, supervision, and retention under Ohio law, a plaintiff must establish:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

*Watson v. City of Cleveland*, 202 Fed.Appx. 844, 857 (6th Cir. 2006) (unpublished disposition) (citing *Linder v. Am. Nat'l Ins. Co.*, 155 Ohio App.3d 30, 39 (2003)).

As Magruder points out, Ohio courts also require a plaintiff to "be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer." *Minnich v. Cooper Farms, Inc.*, 39 Fed.Appx. 289, 296 (6th Cir. 2002) (unpublished disposition) (citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 217 (1988)). Overfield does not maintain that she would have a claim against Diebert. She acknowledges that Diebert did not actually deny Overfield's requests for leave under the FMLA, nor does she point to anything Diebert did to actually block her applications for leave.

Overfield's claim for negligent hiring, supervision, and retention must fail as she fails to show she would have a claim against Diebert herself.

## Conclusion

For the foregoing reasons it is therefore,

ORDERED THAT:

1. Defendant's motion to strike (Doc. 33) be, and the same hereby is overruled; and

2. Defendant's motion for summary judgment (Doc. 31) be, and the same hereby is granted.

So ordered.

s/James G. Carr
Sr. United States District Judge